IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KIERSTEN HENING,<br>         *Plaintiff*,<br>v.<br><br>CHARLES "CHUGGER" ADAIR, in his official capacity as head coach of the women's soccer team at Virginia Polytechnic Institute and State University,<br>         *Defendant*. | **COMPLAINT**<br><br>No.  7:21cv000131 |

Plaintiff, Kiersten Hening, brings this action under the First and Fourteenth Amendments to the U.S. Constitution, *see* 42 U.S.C. §1983, and alleges as follows:

## INTRODUCTION

1. Hening refused to kneel. A three-year starter on Virginia Tech's women's soccer team, she remained standing while her teammates took a knee before a game last fall. Especially in 2020, kneeling before a sporting event is loaded with political, social, cultural, and symbolic meaning. *V.A. v. San Pasqual Valley Unified Sch. Dist.*, 2017 WL 6541447, at *5 (S.D. Cal. Dec. 21, 2017).

2. Hening's stance was costly—too costly. Her coach dislikes Hening's political views. Because she refused to kneel, he benched her, subjected her to repeated verbal abuse, and forced her off the team.

3. But Hening's coach is a state actor, *Jennings v. Univ. of N.C.*, 482 F.3d 686, 701 (4th Cir. 2007) (en banc), and Hening's refusal to kneel is protected by the First Amendment, *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943). The

Constitution gives college students like Hening "the right to be free from [such] retaliation" for their protected expression. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)).

4. As a result of her coach's actions, Hening can no longer play the game she loves, despite having two more years of NCAA eligibility. This Court should vindicate Hening's constitutional rights and award her legal and equitable relief.

## JURISDICTION AND VENUE

5. This action arises under the First and Fourteenth Amendments to the U.S. Constitution and is brought via 42 U.S.C. §§1983 and 1988.

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§1331 and 1343.

7. Venue is proper under 28 U.S.C. §1391 because the events giving rise to the claims occurred in this district and because the sole defendant resides here.

## PARTIES

8. Virginia Polytechnic Institute and State University (better known as Virginia Tech) is a public university organized and existing under the laws of Virginia. Virginia Tech's main campus is in Blacksburg, Virginia.

9. Plaintiff, Kiersten Hening, is a junior at Virginia Tech who played for the women's soccer team from 2018 to 2020. A talented defender, Hening was a starter for both her freshman and sophomore seasons. She played the seventh-most minutes on

the team as a freshman, and the third-most minutes as a sophomore. Heading into her junior season, Hening had played more minutes than any other player on the team. In recognition of Hening's experience and leadership, the coaching staff selected her to do a media interview before the 2020 season began. *See* Berman, *Virginia Tech Women's Soccer Excited to Finally Start Season*, Roanoke Times (Sept. 10, 2020), bit.ly/2Z285co.

10. Defendant, Charles "Chugger" Adair, is the head coach of the women's soccer team at Virginia Tech—a position he has held since 2010. Coach Adair is sued in his official capacity.

## BACKGROUND

11. Over the last several years, this country has had a highly public, sometimes contentious conversation about social justice. The primary topic of debate has been the relationship between police officers and racial minorities.

12. A flashpoint in the current debate occurred in 2016, when the San Francisco 49ers played a football game against the then–San Diego Chargers. Prior to the game, quarterback Colin Kaepernick kneeled during the national anthem. Kaepernick explained that he kneeled in order to protest police brutality against racial minorities.

13. Kaepernick's protest was highly visible, sparked much controversy, and eventually spread across the country, as athletes of many different sports, ages, and skill levels started kneeling before games. By 2020, it was well understood that kneeling

before a game communicated support for Kaepernick's message and the organization that had become the face of that message: Black Lives Matter (or BLM).

14. The current debate reached an acme in the summer of 2020, after George Floyd died during an altercation with Minneapolis police. Floyd's death sparked massive protests across the nation. It also raised the profile of BLM.

15. What started as a social-media hashtag, BLM eventually became a more formal organization. As an organization, BLM became known for encouraging protests that often turned violent. It also adopted radical positions like defunding the police and eliminating "the Western-prescribed nuclear family."

16. As the nation discussed these issues, so did the women's soccer team at Virginia Tech.

17. On September 1, 2020, the Student-Athlete Advisory Committee at Virginia Tech discussed how the school's athletic teams should show support for the social-justice movement. The committee's advisor was Reyna Gilbert-Lowery, a senior associate athletic director at Virginia Tech (and Coach Adair's supervisor). Gilbert-Lowery is a vocal supporter of BLM. The committee thus discussed proposals to have Virginia Tech's student-athletes wear BLM masks, BLM wristbands, BLM armbands, and BLM shirts during pregame warmups and games.

18. When the women's soccer team discussed these proposals, most players supported them.

19. Coach Adair also supported them. Coach Adair even proposed his own idea: the women's soccer team would replace the word "Hokies" on the backs of their jerseys with the names of racial minorities who were the victims of alleged police misconduct. On several occasions, Coach Adair and others on his coaching staff expressed support for athletes who had knelt before games to express their support for the social-justice movement.

20. But Hening quietly dissented. While Hening supports social justice and believes that black lives matter, she does not support BLM the organization. She disagrees with its tactics and core tenets of its mission statement, including defunding the police and eliminating the nuclear family.

21. Hening expressed her disagreement with BLM—and the various social-justice measures the team was discussing—privately to other players.

22. Someone took a screenshot of some of these private messages between girls on the team and shared them with the coaching staff. Some of Hening's teammates also saw the messages and became outraged.

23. After learning the content of the messages, a contingency of players called Coach Adair on September 3, demanding that he address the fact that some of his players were "racist" and did not support BLM.

24. The next day, Coach Adair and other coaches were overheard discussing the players' political views. The coaches speculated, mockingly, that some of the players and their families probably thought "All Lives Matter."

5

25. Meanwhile, shortly before the team's season opener against Virginia on September 12, the team was informed that the Atlantic Coast Conference had drafted a "unity statement" that would be read before every ACC game. The team was not told, and Hening did not know in advance, what the unity statement would say.

26. The unity statement was read shortly before the Virginia game. All starters, including Hening, were standing on the field at the time. While other starters knelt during the unity statement to mirror Kaepernick's protest and to express support for BLM, Hening remained standing.

27. At the next opportunity—halftime of the Virginia game—Coach Adair berated Hening for her stance. He singled her out and verbally attacked her, pointing a finger directly in her face. He denounced Hening for "bitching and moaning," for being selfish and individualistic, and for "doing her own thing." Coach Adair's tirade was so extreme, so personally directed at Hening, and so disconnected from the game itself, that her teammates approached her afterward to comfort her and to express their shock.

28. Coach Adair's attack during halftime was not about the Virginia game or Hening's play. The score at halftime was 0-1, and the only goal that Virginia had scored did not involve Hening. It occurred on the opposite side of the field.

29. Other than Hening, only one other starter refused to kneel for the unity statement. Coach Adair berated Hening, instead of that player, because that player was on scholarship (Hening was a walk-on) and because that player's parents had called and

warned Coach Adair in advance not to retaliate against their daughter for opposing BLM (Hening's parents had not).

30. At practice the next week, during a film session about the Virginia game, Coach Adair again berated Hening. His verbal abuse was repeated, targeted at Hening, and had nothing to do with the actual game or her play. Hening understood that it was a continuation of the politically motivated retaliation that Coach Adair had started during halftime.

31. Hening was unexpectedly removed from the starting lineup for the next game against Clemson, on September 17. Coach Adair let her play only 29 minutes total, and he played her in a position she had never played before in college. Virginia Tech lost the Clemson game 0-3.

32. Coach Adair's conduct in the Clemson game was based on Hening's political views and her refusal to kneel, not soccer or her play. The player he started in Hening's place was new to the position and struggled the entire game. Other players (past and present), parents, and fans expressed confusion about why Hening did not start and why Coach Adair was letting someone struggle in her position instead.

33. During the film session for the Clemson game, Coach Adair once again berated Hening. His verbal abuse was again targeted, again repeated, and again disconnected from Hening's play or the Clemson game—a game where she barely played.

34. In the next game against the University of North Carolina, Coach Adair again refused to start Hening. Hening played only five minutes total. Virginia Tech lost the UNC game 0-1.

35. Coach Adair's conduct in the UNC game was based on Hening's political views and her refusal to kneel, not soccer or her play.

36. Coach Adair's campaign of abuse and retaliation made conditions for Hening so intolerable that she felt compelled to resign. Hening did not want to leave; but, given no real choice, she resigned on September 20.

37. When she left the team, players (past and present), parents, and staff sent messages of support to Hening. Players understood why she left, given Coach Adair's abusive behavior. Staff were disappointed to see her go because she was a hard worker, a skilled player, and—until Coach Adair sidelined her—an important contributor to the team on and off the field. One staff member lamented that Hening's departure was caused, not by soccer decisions, but by "'outside' forces that have been brought inside the program." By "outside forces," he meant BLM and the controversy over Hening's opposition.

## COUNT
### Violation of the First & Fourteenth Amendments

38. Plaintiff repeats and realleges each of the prior allegations in this complaint.

8

39. The First Amendment, as incorporated against the States by the Fourteenth, protects the freedoms of speech and association. *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986). Just as much as it protects the positive rights to speak and associate, the First Amendment safeguards the negative rights "'to refrain from speaking'" and "to eschew association for expressive purposes." *Janus v. AFSCME*, 138 S. Ct. 2448, 2463 (2018).

40. These protections do not "apply with less force" to college students. *Healy v. James*, 408 U.S. 169, 180 (1972). To the contrary, "[t]he vigilant protection of constitutional freedoms is nowhere more vital." *Id.* College students "must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." *Sweezy v. N.H. ex rel. Wyman*, 354 U.S. 234, 250 (1957). Indeed, Virginia Tech promises that its students "enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia." *Virginia Tech Student Code of Conduct 2020*, at 4, bit.ly/2Z2LdK2.

41. Because state actors cannot "produce a result which [they] could not command directly," *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), the First Amendment also prohibits "'retaliation'" against students who exercise their rights. *Constantine*, 411 F.3d at 499; *accord Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78 (1990). Put simply, "[o]fficial reprisal for protected speech offends the Constitution." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

42. This ban on retaliation applies even if the person "has no 'right' to [the] governmental benefit" and even if the government can "deny him the benefit for any number of reasons." *Perry*, 408 U.S. at 597. What the state actor did is irrelevant; "the government's *reason* for [acting] is what counts." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016) (emphasis added). The illegal retaliation can be something "as trivial as failing to hold a birthday party." *Rutan*, 497 U.S. at 75 n.8.

43. It does not matter if the retaliation is unsuccessful at chilling the target's speech. The constitutionality of the retaliatory action does not turn on "the plaintiff's will to fight." *Constantine*, 411 F.3d at 500.

44. The First Amendment is violated whenever speech, politics, or association motivated the retaliatory action "at least in part." *Cruise-Gulyas v. Minard*, 918 F.3d 494, 497 (6th Cir. 2019).

45. Hening's political beliefs and her refusal to kneel are protected by the First Amendment.

46. Coach Adair retaliated against Hening for exercising her First Amendment rights by benching her, launching a campaign of verbal abuse against her, and effectively forcing her off the team. These actions—both in isolation and in combination—would deter a person of ordinary firmness from exercising her First Amendment rights.

47. Coach Adair took these actions under color of state law. *See Jennings*, 482 F.3d at 701 (soccer coach "functioning in his capacity as a coach" is "a state actor" under §1983).

48. If Hening rejoined the team without a court order, Coach Adair's illegal retaliation would continue. His abuse toward Hening was prolonged and repeated, and it ended only when Hening left the team. Both the team and the ACC, moreover, will continue to take collective action in support of BLM. The ACC has announced that the unity statement, for example, will continue to be read before every game in 2021.

49. Coach Adair intentionally violated the Constitution and acted with reckless and callous disregard for Hening's rights.

## PRAYER FOR RELIEF

Hening respectfully asks this Court to enter judgment in her favor and to provide the following relief:

a. A declaratory judgment that Coach Adair violated Hening's First and Fourteenth Amendment rights;

b. A permanent injunction ordering Coach Adair to undergo First Amendment training, to let Hening rejoin the team, and to take no adverse action against Hening based on any exercise of her First Amendment rights;

c. Compensatory damages;

d. Punitive damages;

e. Nominal damages;

f. Hening's reasonable costs and expenses of this action, including attorneys' fees, per 42 U.S.C. §1988 and all other applicable laws; and

g. All other relief that Hening is entitled to.

## JURY DEMAND

Plaintiff requests a jury trial.

                                     Respectfully submitted,

Dated: March 3, 2021             _/s/ Cameron T. Norris_

Adam K. Mortara (pro hac vice forthcoming)
LAWFAIR LLC
125 South Wacker Drive, Ste. 300
Chicago, IL 60606
(773) 750-7154
mortara@lawfairllc.com

Jeffrey M. Harris (VA Bar #93883)
Cameron T. Norris (VA Bar #91624)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for Plaintiff Kiersten Hening*