IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

KIERSTEN HENING,

        Plaintiff,

v.                                      CIVIL ACTION NO. 7:21-cv-00131
                                            Judge Thomas T. Cullen

CHARLES "CHUGGER" ADAIR,

        Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO EXCLUDE EXPERT WITNESS JAMES MADDUX**

Defendant Charles "Chugger" Adair, by counsel, files this memorandum in support of his Motion to Exclude Expert Witness James Maddux.

STATEMENT OF THE CASE

Plaintiff Kiersten Hening brings a claim for First Amendment Retaliation against Defendant Charles "Chugger" Adair. Hening, a former Virginia Tech women's soccer player, quit the team three matches into the 2020 season. She alleges she was forced to quit because Coach Adair's lineup changes and coaching criticism were, in her opinion, directed at her because she stood during the ACC Unity Statement before the first game of the season against the University of Virginia ("UVA"). In short, Hening disagrees with her Coach's assessment of her play and his choice of lineups.

Hening has retained proposed expert James Maddux, a financial advisor, to opine on the following issues:

1. Analyze the Virginia Tech v. UVA match; and

2. Evaluate Hening's play and render an opinion about whether the reasons Coach Adair has offered for his comments to Hening were accurate from the perspectives of the Laws of the Game of soccer and *accepted standards in soccer coaching*[1].

(Opening Expert Report of James Maddux at p. 2, *attached as* **Exhibit A**) [emphasis added].

Maddux last coached men's, not women's, soccer eighteen years ago in the fall of 2004 for Lipscomb University in Nashville, Tennessee. (**Ex. A** at p. 1). Since that time he has worked fulltime as a financial advisor. (J. Maddux Dep. Tr. 30:22–32:12), *attached as* **Exhibit B** His coaching career spanned a total of five years: four as an assistant and one as the head coach. (**Ex. A** at p. 1). He never won a match in his head coaching career, which lasted for one year with a record of 0–18. (**Ex. A** at p. 1; **Ex. B** at 12:11–14:22; Lipscomb University 2004 Men's Soccer Schedule, *attached as* **Exhibit C**). While Maddux contends he still unofficially "advise[s] the [Lipscomb] coaching staff," he does not review film, provide scouting reports, advise on lineups, or evaluate players. (**Ex. B** at 15:1–16:22). His connection with the program consists of "listening" to the Lipscomb coach when he might "stop by my house, we chat, depends on the game and how they were doing, . . . just depends upon how the night went, we might chat, we might not, depends." (***Id.*** at 16:1–22).

---

[1] As will be discussed below, Maddux was unable to identify these standards and defined them as developed from his own experience, not from any reliable principles and methods.

While Maddux claims to have "professional" discussions with the Lipscomb coach about soccer, he could not remember any during his deposition." (*Id*.)

Maddux obtained a United States Soccer Federation National "A" Coaching License in 2005. (**Ex. A** at p. 1). He let the license lapse when he became a financial advisor, and he is no longer licensed. (*Id.*; **Ex. B** at 29:14–22).

In reaching his conclusions, Maddux only reviewed the VT at UVA match film, which did not have audio. (**Ex. B** at 19:8–20:4; 23:2–3). He did not talk to Hening, Coach Adair, or any other players. (*Id.*). He did not know Virginia Tech's gameplan. (*Id.* at 28:1–17). He did not know the athletic reputation or strengths and witnesses of the UVA team. (*Id.*).

Maddux could not point to a discernable set of "accepted standards in soccer coaching." (**Ex. B** at 17:12–19:7; 32:13–34:18). When asked about the standards to which he was referring in reaching his opinions about Hening's play and Coach Adair's comments about her play, Maddux stated:

> **Maddux**: I would say that those standards are developed from, you know, at the time, 30, 40, years' worth of playing coaching, and educational development, of which our coaching profession recognizes is the, I guess, level of acceptance for any coaching position held by a college, youth teams, youth development teams that require certain coaching badges.
> . . .
>
> **Question**: So the standards you used here were all-encompassing based upon your experience, based upon your licensure, based upon the laws of the game[?]
>
> **Maddux**: All of it, correct.

(*Id.*).

3

Maddux did concede that a coach must adjust player lineups and formations based upon the strengths and weaknesses of the opposing team. (**Ex. B** at 25:14–28:4). The only standard he articulated in his deposition was that a coach should "adapt formations and your lineups to your opponent." (**Ex. B** at 28:1–4).

## ARGUMENT AND AUTHORITY

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In addition to Federal Rule of Evidence 702, the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), govern the admissibility of expert testimony. The governing law "imposes a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (emphasis in original) (cleaned up); *see Daubert*, 509 U.S. at 597.

4

Because expert evidence can be particularly persuasive to a jury, "the importance of the gatekeeping function cannot be overstated." *Sardis*, 10 F.4th at 283 (quoting *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)). Given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to aid the jury should be excluded. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (citing *United States v. Dorsey*, 45 F.3d 809, 815–16 (4th Cir. 1995)). "The question of whether a witness is qualified to testify [as an expert] is context-driven and can only be determined by the nature of the opinion he offers." *RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.*, 609 F. App'x 731, 738 (4th Cir. 2015) (per curiam) (internal quotation marks omitted). To guide the court in its reliability determination, *Daubert* sets out four considerations: "(1) whether the expert's theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error inherent in the expert's theory or technique; and (4) whether the expert's methodology is generally accepted in his field of expertise." *Sardis*, 10 F.4th at 281 (internal quotation marks omitted). This is a "non-exhaustive" list of factors, and a district court enjoys "broad latitude to determine which of these factors (or some other unspecified factors) are reasonable measures of reliability in a particular case." *Id.* (internal quotation marks omitted). "[T]he relevance of [these] factors can 'depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony.' " *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 153).

I. **James Maddux does not qualify as an expert by knowledge, skill, experience, training, or education and, therefore, his testimony will not help the jury to understand the evidence or to determine a fact in issue.**

Under any objective analysis, Maddux does not meet the definition of an expert. He has not coached for seventeen years. The one year he served as head coach, he did not coach women and failed to win a single match – going 0–18. He has not maintained the continuing education requirements for a coaching license. He does not evaluate players, review film, or work on game plans. He simply states that he "listens" to Lipscomb's current coach should he stop by Maddux's house. He never coached women. Furthermore, he cannot articulate the standards he applied to his analysis, which consisted of a review of Hening's play overlayed with his personal opinions. Maddux does not meet the *Daubert* threshold to begin to qualify as an expert or offer an opinion.

II. **James Maddux's testimony is not based on scientific facts or data; is not the product of reliable principles and methods; and he has not reliably applied any principles and methods to the facts of the case.**

Maddux watched a match film without knowing the players, team, or strategy and offered his "Monday-morning-quarterback" opinion on Hening's play. He failed to identify any "accepted standards of soccer coaching" beyond his personal opinions. Hening offered the same opinions about her play and Coach Adair's comments and lineups in her deposition and text messages with her parents. She can testify as to her play and positioning as well as Maddux.

Nothing requires the Court "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Maddux's testimony is nothing more than unproven assertions applied to his own experiences. Rule 702 requires "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests entry of an Order excluding James Maddux from testifying in this matter and granting such further relief as the Court deems just and proper.

Respectfully submitted,

CHARLES "CHUGGER" ADAIR

By:     s/ M. Hudson McClanahan
Counsel for Defendant Charles "Chugger" Adair

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
heidbred@vt.edu

M. Hudson McClanahan (VSB No.: 46363)
Associate University Legal Counsel and
Assistant Attorney General
hud3@vt.edu

Mark A. Gess (VSB No.: 71016)
Associate University Legal Counsel and
Assistant Attorney General
mgess@vt.edu

7

University Legal Counsel
236 Burruss Hall (0121)
800 Drillfield Drive
Blacksburg, VA   24061
Phone:  (540) 231-6293
Fax:  (540) 231-6474

8

**CERTIFICATE OF SERVICE**

      I hereby certify that, on this 4th day of November, 2022, the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE EXPERT WITNESS JAMES MADDUX was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF), to the following:

> Jeffrey M. Harris
> Cameron T. Norris
> Michael Connolly
> Jim McGlone
> CONSOVOY MCCARTHY PLLC
> 1600 Wilson Blvd. Suite 700
> Arlington, VA  22209
> (703) 243-9423
> jeff@consovoymccarthy.com
> cam@consovoymccarthy.com
> mike@consovoymccarthy.com
> jim@consovoymccarthy.com
> *Counsel for Plaintiff*
>
> Adam K. Mortara (*pro hac vice*)
> Lawfair LLC
> 40 Burton Hills Boulevard, Suite 200
> Nashville, TN  37215
> (773) 750-7154
> mortara@lawfailllc.com
> *Counsel for Plaintiff*

                                       s/ M. Hudson McClanahan
                              Counsel for Defendant Charles "Chugger" Adair