IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KIERSTEN HENING,<br>         *Plaintiff*,<br>v.<br>CHARLES "CHUGGER" ADAIR, in his official capacity as head coach of the women's soccer team at Virginia Polytechnic Institute and State University,<br>         *Defendant*. | No. 7:21-cv-131-TTC-RSB |

**PLAINTIFF'S MOTION FOR SANCTIONS**

Macaulay Soto, a former staffer on the Virginia Tech women's soccer team who was deposed in July 2022, is a key witness for the defense. Adair listed Soto in his initial disclosures, cites her deposition several times in his motion for summary judgment, and plans to play her video deposition for the jury. Yet when Hening's lawyers deposed Soto, they were missing an important text exchange establishing Soto's bias against Hening. Hening's lawyers *never* would have received this text exchange at all, except that another deponent happened to volunteer its existence at his deposition months later.

Adair's lawyers violated the discovery rules. The text exchange was responsive to at least two of Hening's discovery requests—one to Adair, and one to Soto. Adair's lawyers agreed to search Soto's documents in discovery in this case and took on the obligations of the federal rules as it pertains to that production. Rules 26 and 37 thus required Adair to either object (he didn't do that) or produce the exchange (he didn't

1

do that either). His failure prejudiced Hening; it required counsel to take Soto's deposition without key evidence undermining her testimony—a video deposition taken in Knoxville, Tennessee, that cannot be edited or retaken. The conduct of Adair's lawyers was not substantially justified; in meet-and-confer discussions, they have offered shifting excuses and no explanation for why the document wasn't produced, except perhaps spoliation (another basis for discovery sanctions).

Hening asks this Court to remedy Adair's violation by imposing only the mildest sanction specified in the Rules. Namely, before Soto's deposition is played for the jury, the jury should be instructed that Adair violated the discovery rules by failing to produce a document that Hening believes shows Soto's bias against her. *See* Fed. R. Civ. P. 37(c)(1)(B). The Court could also instruct the jury that it can infer from this conduct that there may have been other documents not produced that tend to support Hening's case and not Adair's. *See* Fed. R. Civ. P. 37(c)(1)(C).

## STATEMENT OF FACTS

The question in this case is whether Adair retaliated against Hening for refusing to kneel before a soccer game on September 12, 2020. Adair claims that he never saw Hening remain standing. But his only evidence for this (partial) defense—beyond his own self-serving assertions—is the testimony of his then-director of operations, Macaulay Soto. In her deposition, Soto testified that she told Adair about Hening's refusal

to kneel for the first time a few days after the game. In support of his motion for summary judgment, Defendant cites Soto's deposition three times on this point. *See* Doc. 22 at 4.

But two months after Soto's deposition, a previously unproduced text exchange was unearthed at another deposition. *See* Doc. 35-8 (Mullen Dep. Tr.) at 1321:24-133:17. This exchange demonstrates Soto's bias against Hening and thus tends to discredit her as a mere neutral observer. On September 29, 2020, while discussing the team's social media with its communications director, Marc Mullen, Soto commented approvingly on a planned post because it would "[t]hrow[] shade at Kiersten a little bit." Soto-Mullen Text Message (Exhibit 1). Mullen had not mentioned Hening, and the post under discussion was simply celebrating another defensive player. Soto raised the idea of "throwing shade" unprompted, just nine days after Hening's resignation from the team. And just a week later, the coaching staff knew that Hening was seeking legal counsel and was in discussions with the athletic department and office of general counsel about how to proceed. Adair-Kopp Message (Exhibit 8); Internal Correspondence (Exhibit 9).

Soto's text message to Mullen was responsive to two separate discovery requests from Hening. Adair's lawyers have offered no sensible explanation for why the document wasn't produced in response to either request.

***First***, Plaintiff subpoenaed Soto in July 2021 to produce "[f]rom any time, all documents and communications concerning Kiersten Hening." Soto Subpoena (Exhibit 3), at 6. This request included documents "irrespective of whether they appear[ed] on official or personal devices." *Id.* at 4. Because Soto was still a Virginia Tech employee, Adair's counsel agreed to accept service of the subpoena and provide the response. *See* Defendant's Combined Response to Plaintiff's First Request for Production of Documents to Defendant (Exhibit 4), at 1. Accordingly, Adair produced several of Soto's text messages, including messages from before September 29, 2020, *see, e.g.*, Soto Messages (Exhibit 7), but not the credibility-damaging one from September 29.

Adair's explanations for this omission do not hold together. His counsel first "speculate[d]" that "Ms. Soto did not retain the text and so it was not in existence when [Plaintiff] issued [her] subpoena." Attorney Correspondence (Exhibit 2), at 4. But Soto *did* produce text messages from the same timeframe sent to other Virginia Tech employees from the same phone. *See* Ex. 7. Despite follow-up inquiries, Adair's counsel hasn't tried to explain why or how Soto retained some text messages but not others. Ex. 2 at 4-6.

Moreover, even assuming that Soto deleted this message before Hening issued her subpoena, Adair's lawyers have never explained why that isn't their fault, given that they were Soto's counsel for purposes of discovery. Soto was, at all relevant times, an employee of Virginia Tech who worked under Adair. And Adair's lawyers not only serve as Virginia Tech's attorneys, but also agreed to produce documents for Soto in response

4

to the subpoena. Nevertheless, and despite inquiries, Adair's lawyers have not explained when or how they advised Soto to retain potentially relevant documents. *See* Ex. 2 at 4-6. Nor have they explained why, when they accepted service of Soto's subpoena, they had no duty to ensure she properly produced all responsive documents. *Id.*

**Second**, Adair should have produced the message once his lawyers obtained possession of it—as they admitted they had—from Mullen. Hening's first request for production to Adair called for "all documents and communications concerning Kiersten Hening." Plaintiff's First Request for Production of Documents to Defendant (Exhibit 4), at 4. The request instructed Adair to include "documents in the possession, custody or control your representatives, assistants, servants, employees, and (unless privileged) attorneys," and to produce documents "irrespective of whether they appear on official or personal devices." *Id.* at 1. The request was "continuing in character" and required "supplemental responses" as needed. *Id.* at 2.

Adair's lawyers have said on the record that, during this litigation, they performed an electronic extraction of Mullen's phone. They thus obtained all of Mullen's text messages, including the unproduced message from Soto. As Mullen testified, "[Counsel] swept through my phone and any reference to Kiersten or Hen[i]ng or anything like that was ... pulled off my phone." Doc. 35-8 at 18:7-13. Indeed, Adair's counsel himself then said, "I would say for the record, if it was responsive to any discovery request, [Plaintiff's counsel] should already have any copy of any relevant text messages from Mr. Mullen.... [H]is documents would have been included as employee records in the

5

discovery requests. *If that text message was responsive to any of [Plaintiff's] questions, you should already have a copy of it.*" *Id.* at 18:14-19:3 (emphasis added).

But once Hening started inquiring into this omission, Adair's lawyers took a new position. They now say that Hening could have obtained the message only through a third-party subpoena to Mullen. *See* Ex. 2 at 4 ("I'm not aware of you issuing a subpoena to Marc Mullen for his text messages, which would have yielded the ... Soto text messages."). Adair's lawyers have not explained why their original position taken "on the record"—that Mullen's "documents would have been included as employee records in the discovery requests"—was wrong.

## ARGUMENT

Under Rule 37, this Court can impose appropriate sanctions for a party's failure to disclose responsive information in discovery. "If a party fails to provide information" in response to a discovery request, courts can impose any appropriate sanction, including "inform[ing] the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(B)-(C). The Rule 37(c)(1)(B) sanction is normal and considered relatively mild for this kind of discovery violation. *E.g.*, *Baylor v. Comprehensive Pain Mgmt. Centers, Inc.*, 2011 WL 1325994, at *4, *7, *10 (W.D. Va. Apr. 6) (imposing the Rule 37(c)(1)(B) sanction where the defendant belatedly disclosed documents that were relevant to an earlier deposition of a witness "beyond the subpoena power of the court"); *Fanelli v. BMC Software, Inc.*, 2015 WL 13122473, at *4 (N.D. Ga. Apr. 29, 2015) (similar). And no showing of bad faith or

culpability is required. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (cleaned up).

To avoid this sanction, Adair has the burden to show that his violation was substantially justified or harmless. *Id.*; *see* Fed. R. Civ. P. 37(c)(1). This Court has "'broad discretion' to determine whether a nondisclosure of evidence is substantially justified or harmless." *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 117 (4th Cir. 2021). Adair can make neither showing here.

## I. Adair's failure to produce the text message revealing Soto's bias against Hening was not substantially justified.

Adair's attempts to excuse his nondisclosure wilt under scrutiny. The message should have been produced as part of the subpoena to Soto, the request for production to Adair, or both.

Regarding the subpoena to Soto, Adair speculates that Soto deleted the message. *See* Ex. 2 at 5 ("Perhaps [Soto] regularly deletes messages. [Plaintiff] did not file suit until the next year."). But Soto produced numerous other messages from the same phone, sent around the same time, between her and a variety of other interlocutors. Adair's suggestion that Soto deleted this message about Hening to a colleague on the team, but not the others that she did produce, is evidence-free and incongruous.

This suggested spoliation also ignores the duty of Adair's counsel to ensure that Soto properly retained and produced relevant documents. Within weeks of the message being sent, his lawyers were already discussing the prospect of litigation with him and

7

other Virginia Tech employees. Exs. 8, 9. Counsel should therefore have taken reasonable steps to advise Soto, who was still an employee of Virginia Tech, to retain all documents in her possession that could be material in litigation. Adair's lawyers insist that Soto "was properly advised to retain information," Ex. 2 at 5, but they have not said *when* she was so advised. To the contrary, their note that "[Plaintiff] did not file suit until the next year," *id.*, suggests that his lawyers might not have advised witnesses to retain documents until far too late. If, as counsel suggests, Soto deleted this message (but not others) before her subpoena was issued, the fault would still lie with counsel, and an adverse instruction would still be warranted as a sanction. *See* Fed. R. Civ. P. 37(e) (allowing court to take "measures ... to cure the prejudice" to one party from the loss of "electronically stored information that should have been preserved" but that was "lost because a party failed to take reasonable steps to preserve it").

As for the request for production to Adair, his explanation for why the message was not produced falls even flatter. Adair has stated that Hening should have subpoenaed Mullen himself, Ex. 2 at 4-5, but Hening's request to Adair should have discovered it. That request called for "documents in the possession, custody or control of your representatives, *assistants*, servants, *employees*, and (unless privileged) *attorneys*." Ex. 4 at 1 (emphases added). Meanwhile, Mullen testified, and Adair's lawyers acknowledged on the record, that this message and any other message on Mullen's phone related to Hening was placed in counsel's possession. Doc. 35-8 at 18:7-19:3. That alone triggered counsel's continuing duty to supplement Adair's production.

8

Adair has not suggested that Mullen's copy of the message would not come within Plaintiff's First Request for Production. In response to Hening's inquiries, counsel has never asserted privilege, challenged the document's responsiveness, or made any other argument for why the document would not fall within the terms of the request. Indeed, counsel admitted on the record that any document from Mullen about Hening "would have been included as employee records in the discovery requests." *Id.* at 18:21-24. Beyond his bare (and irrelevant) assertion that Hening could have subpoenaed Mullen separately, Adair has not explained his reversal of position. Nor has he explained why, absent a subpoena to Mullen, he was substantially justified in withholding a document in his lawyers' possession that was responsive to a discovery request directed at him.

## II. Adair's failure to produce the text message until long after Soto's deposition prejudiced Hening.

Nor was Adair's nondisclosure harmless, as it prejudiced Hening. Had this document been produced, her counsel could have examined Soto on her animus toward Hening. Her testimony that she "like[s] Miss Hening" and considered her "a friend" before this lawsuit could have been impeached. Doc. 35-12 (Soto Dep. Tr.) at 15:11-22. And her testimony that Adair did not see Hening refuse to kneel would be undermined because her status as a "neutral" observer would be put in doubt.

Because she now lives in Tennessee, though, Soto is unavailable to testify at trial, meaning the parties can use her testimony only by playing the video recording of her

9

deposition for the jury. That recording will contain no cross-examination about Soto's text message to Mullen because Adair failed to produce that document in discovery. And Soto will not be there to cross-examine anew. An instruction about Adair's discovery violation is thus the only way to remedy the harm to Hening and deter similar conduct in the future. *See Baylor*, 2011 WL 1325994, at *8, *10.

## CONCLUSION

This Court should grant an instruction that, at the time of Soto's deposition, Defendant had violated the discovery rules by not disclosing information suggesting that the witness harbors bias against Plaintiff. And depending on Adair's justifications, this Court should instruct the jury that it can infer from this conduct that there may have been other documents not produced that tend to support Hening's case and not Adair's.

Respectfully submitted,

Dated: December 5, 2022         /s/ Cameron T. Norris

Adam K. Mortara (pro hac vice)     Jeffrey M. Harris (VA Bar #93883)
LAWFAIR LLC                        Cameron T. Norris (VA Bar #91624)
125 South Wacker Drive, Ste. 300   James P. McGlone (pro hac vice)
Chicago, IL 60606                  CONSOVOY MCCARTHY PLLC
(773) 750-7154                     1600 Wilson Blvd., Suite 700
mortara@lawfairllc.com             Arlington, VA 22209
                                   (703) 243-9423
                                   jeff@consovoymccarthy.com
                                   cam@consovoymccarthy.com
                                   jim@consovoymccarthy.com

*Counsel for Plaintiff Kiersten Hening*